1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**
9            **SOUTHERN DISTRICT OF CALIFORNIA**
10
11   UNITED STATES OF AMERICA,                    CASE NO. 09cr0082 JM
12                            Plaintiff,           ORDER DENYING MOTION TO
                  vs.                              SUPPRESS EVIDENCE
13   JOSEPH FRANCIS ELLIOT,
14                            Defendant.
15
16           Defendant Joseph Francis Elliot moves to suppress evidence on grounds that (1) the officer
17   lacked probable cause or reasonable suspicion to stop the vehicle driven by Defendant and (2) the
18   officer unlawfully searched the vehicle.  The Government opposes the motion.  Having carefully
19   considered the moving papers, two rounds of supplemental briefing, the evidence presented at the time
20   of the evidentiary hearing, applicable authorities, and the court record, the court denies the motion to
21   suppress evidence.
22                                        **BACKGROUND**
23           The following background statement is derived from the evidence presented at the time of the
24   evidentiary hearing conducted on April 27, 2009.  At around 9:00 a.m. on December 8, 2008 Carlsbad
25   Police Officer Severy observed a black Silverado pickup truck with Maryland plates and noticed dark
26   tinting on the side windows and a cracked windshield.  Each observed defect is an infraction of Cal.
27   Vehicle Code §§ 26708 and 26710, respectively.  The officer initiated a traffic stop.  The driver,
28   Defendant Elliot, did not have his driver's license with him but provided the officer with his California

1  driver's license number and the vehicle's Maryland registration, showing Defendant as the registered

2  owner.

3     Officer Severy conducted a records check which revealed (1) the driver's license of Defendant

4  had been and still was suspended and (2) Defendant's criminal history.  Officer Severy then requested

5  Defendant to exit the vehicle and to sit on the curb.  Officer Severy sought to remove and store the

6  vehicle pursuant to Vehicle Code §22651(p) - unlicensed driver.[1]  Officer Severy asked Defendant for

7  consent to search the vehicle, which was the officer's standard operating procedure even in those

8  circumstances where he believed consent was unnecessary.  Defendant declined to give his consent

9  to search the vehicle.

10     Officer Severy testified that he then conducted an inventory search pursuant to Carlsbad Police

11  Department Policy Manual Section 510.4 and discovered a semi-automatic handgun and four

12  ammunition clips in a non-factory compartment located in the truck's center console.  Officer Severy

13  testified that he lifted-up a loose cup holder from the center console of the truck.  He further testified

14  that although the cup holder is normally fastened to the console, his experience was that individuals

15  can place items, including contraband, in the space underneath the cup holder.  Following discovery

16  of the weapon, Defendant was arrested, handcuffed, and transported to the Carlsbad Police Station.[2]

17     A criminal records check revealed that Defendant, on April 28, 1997, was convicted of

18

19     [1] Cal.Vehicle Code §22651(p) provides:

20  A peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2 of the
Penal Code, or a regularly employed and salaried employee, who is engaged in directing traffic or

21  enforcing parking laws and regulations, of a city, county, or jurisdiction of a state agency in which a
vehicle is located, may remove a vehicle located within the territorial limits in which the officer or

22  employee may act, under the following circumstances:

23

24  (p) When the peace officer issues the driver of a vehicle a notice to appear for a violation of Section
12500, 14601, 14601.1, 14601.2, 14601.3, 14601.4, 14601.5, or 14604 and the vehicle is not

25  impounded pursuant to Section 22655.5. A vehicle so removed from the highway or public land, or
from private property after having been on a highway or public land, shall not be released to the

26  registered owner or his or her agent, except upon presentation of the registered owner's or his or her
agent's currently valid driver's license to operate the vehicle and proof of current vehicle registration,

27  or upon order of a court.

28     [2] Defendant does not dispute the proposition that once the firearm was discovered, probable
cause to arrest Defendant existed.

possession and sale of a controlled substance in violation of H & S §11378.  On January 8, 2009 Defendant was charged in a two count federal indictment with being a felon in possession and possession of a firearm with an obliterated serial number.  By means of the present motion, Defendant moves to suppress evidence of the handgun.

## DISCUSSION

Lack of Probable Cause to Stop the Vehicle

Defendant first contends that the Government will not be able to establish that the tinting on the windows or the alleged crack in the windshield violated the vehicle codes.  (Motion at p.3:8-9).  This argument is not persuasive.  "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."  Whren v. United states, 517 U.S. 806 (1996).  An investigatory stop; is also justified where the officer has reasonable suspicion of wrongdoing.  United States v. King, 244 F.3d 736, 738 (9th 2001).  Here, Officer Severy had both probable cause and reasonable suspicion to stop the vehicle.  He testified that the tinting on the side windows and the cracked windshield violated Cal. Vehicle Code §§ 26708 and 26710, respectively.  The Government also produced photographs of the vehicle demonstrating that the side windows were "tinted" darker than permitted by law, and that the windshield had extensive cracks.  (Gov't Exhs. 4, 6 - 14).

In sum, the court denies the motion to suppress based upon lack of probable cause or reasonable suspicion to stop the vehicle.

Unlawful Search of the Vehicle

Defendant argues that the search of the vehicle was an unlawful search incident to arrest under Arizona v. Gant, –U.S. –, 2009 WL 1045962 (April 21, 2009) and, alternatively, an unlawful inventory search.  As the search of the vehicle was conducted pursuant to established inventory procedures adopted by the Carlsbad Police Department, the court does not reach the search incident to arrest issue.

An inventory search is an incidental administrative step following a decision to remove a

1    vehicle for either storage or impound.[3] Illinois v. LaFayette 462 U.S. 640, 643-644 (1983). An

2    inventory search of an impounded or stored vehicle is reasonable under the Fourth Amendment

3    provided law enforcement has a standardized policy regarding the impound/storage decision and

4    search. Colorado v. Bertine, 479 U.S. 367, 374-375 (1987).

5        As the United States Supreme Court has recognized, "inventory searches are now a

6    well-defined exception to the warrant requirement of the Fourth Amendment." Colorado v. Bertine,

7    479 U.S. at p. 371. "In the interests of public safety and as part of what the Court has called

8    'community caretaking functions,' [citation] automobiles are frequently taken into police custody."

9    South Dakota v. Opperman, 428 U.S. at p. 368. "[I]t is undisputed that once a vehicle has been

10   impounded, the police may conduct an inventory search." United States v. Wanless , 882 F.2d 1459,

11   1463 (9th Cir.1989). "[L]ocal police departments generally follow a routine practice of securing and

12   inventorying the automobiles' contents. These procedures developed in response to three distinct

13   needs: the protection of the owner's property while it remains in police custody [citation]; the

14   protection of the police against claims or disputes over lost or stolen property [citation]; and the

15   protection of the police from potential danger [citation]. The practice has been viewed as essential to

16   respond to incidents of theft or vandalism." South Dakota v. Opperman, 428 U.S. at 369.  Anything

17   observed during the inventory search is admissible against the defendant. Id. at 376.

18        In evaluating the reasonableness of inventory searches under the Fourth Amendment, the

19   Supreme Court "has consistently sustained police intrusions into automobiles impounded or otherwise

20   in lawful police custody where the process is aimed at securing or protecting the car and its contents."

21   South Dakota v. Opperman, 428 U.S. at p. 373.  "A so-called inventory search is not an independent

22   legal concept but rather an incidental administrative step following [impound]...." Illinois v.

23   LaFayette, 462 U.S. 640, 644 (1983).  The search should be carried out pursuant to standardized

24   procedures, as this would "tend[ ] to ensure that the intrusion would be limited in scope to the extent

25   necessary to carry out the caretaking function." South Dakota v. Opperman, 428 U.S. at 375.  "The

26   policy or practice governing inventory searches should be designed to produce an inventory. The

27

28        [3] Officer Severy testified that the only difference between storing a vehicle and impounding
     it is the minimum 30 day period during which an impounded vehicle may not be released.

1   individual police officer must not be allowed so much latitude that inventory searches are turned into

2   a purposeful and general means of discovering evidence of crime." Florida v. Wells, 495 U.S. 1, 4

3   (1990).  "[A]n inventory search is reasonable under the Fourth Amendment only if it is done in

4   accordance with standard procedures that limit the discretion of the police."  Id. at 8.

5          Here, the court concludes that (1) the vehicle was to be properly towed and stored and (2)

6   Officer Severy conducted a valid inventory search pursuant to Carlsbad Police Department Policy

7   Manual Section 510.4.  First, California courts have repeatedly held that §22651 provides police

8   officers with the clear authority to impound or store vehicles.  People v. Green, 46 Cal.App.4th 367

9   (1996).  Second, the inventory search was conducted in compliance with Carlsbad Police Department

10  Policy Manual Section 510.4.  That policy  provides:

11         All property in a stored or impounded vehicle shall be inventoried and listed on the
           vehicle storage form.  This includes the trunk and any compartments or containers,
12         even if closed and/or locked.  Members conducting inventory searches should be as
           thorough and accurate as practical in preparing an itemized inventory. These inventory
13         procedures are for the purpose of protecting an owner's property while in police
           custody, to provide for the safety of officers, and to protect the Department against
14         fraudulent claims of lost, stolen, or damaged property.

15  (Gov't Exh. 22).  Officer Severy testified that he followed the vehicle inventory policy of the Carlsbad

16  Police Department.  His testimony also establishes that the inventory search at issue was objectively

17  reasonable under the Fourth Amendment.   Officer Severy commenced the inventory search by

18  jiggling the cup holder of the vehicle.  Based upon his past experience with this type of console

19  configuration, and noting the looseness of the cup holder, he simply lifted up and removed the cup

20  holder without the use of any tools.  This is not the case, as argued by Defendant, where Officer

21  Severy used the inventory search as a pretext to dismantle the vehicle in an effort to discover

22  incriminating evidence.  To the contrary, Officer Severy was merely accessing a compartment which

23  was readily available to Defendant and in which he had reposed a firearm.  Defendant appears to argue

24  that officers may only search the "glove compartment, or other compartments designed by the

25  manufacturer to be used to hold items, bags, purses, [and] suitcases."  (Supp. Memo at p.4:9-10,

26  Docket No. 28).  Here, the space under the cup holder functioned as the equivalent of a glove

27  compartment.  In fact, Defendant could access the cup holder and retrieve the firearm even easier than

28  from the glove compartment where he would have to reach from the drivers seat to the glove

1 compartment located on the passenger side of the vehicle's interior. Such an easily accessible non-

2 factory compartment, as modified by Defendant by removing all fasteners from the cup holder, is the

3 functional equivalent of a glove compartment.

4        With respect to Defendant's argument that the dismantling of the console invalidated the

5 inventory search, the court notes again that no disassembly was required to remove the cup holder.

6 Officer Severy simply lifted up and removed the cup holder. The cup holder was not attached by any

7 fastener requiring disassembly. Defendant also argues that the inventory search was a pretext to

8 search for evidence of a crime because Officer Severy did not list all the property located within the

9 passenger compartment of the vehicle. Officer Severy testified that he lists groupings of items and

10 noted, consistent with the inventory policy to be as "thorough and accurate as practical in preparing

11 an itemized inventory," (Gov't Exh. 22), and that it is not always practical to list every item found

12 within a vehicle when there are numerous items. While the inventory list could have been more

13 detailed, this fact does not undermine the validity of the inventory search.

14        In sum, the motion to suppress is denied in its entirety.

15        **IT IS SO ORDERED.**

16 DATED: May 8, 2009

17 _____

18        Hon. Jeffrey T. Miller
       United States District Judge

19

20 cc:       All parties

21

22

23

24

25

26

27

28

       09cr0082